**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  February 21 2023**

John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION – CANTON

| | | |
|---|---|---|
| In Re: | ) | Case No. 22-60625 |
| | ) | |
| Merl E. Williamson and | ) | Chapter 13 |
| Barbara Jayne Williamson, | ) | |
| | ) | Judge John P. Gustafson |
| Debtors. | ) | |

## <u>MEMORANDUM AND ORDER RE: TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN</u>

This cause comes before the court on an *Objection to Confirmation of Plan* filed on August 11, 2022, by the Chapter 13 Trustee, Dynele L. Schinker-Kuharich, [Doc. #16], by which the Trustee objected to confirmation of the *Chapter 13 Plan*, filed by Merl E. Williamson and Barbara Jayne Williamson (the "Debtors") on July 14, 2022. [Doc. #2].  On September 16, 2022, the Debtors filed their *Brief In Support of Their Position Regarding Objection to Confirmation of Plan* ("Debtors' Brief"). [Doc. #25].  On September 26, 2022, in response, the Trustee filed her *Brief in Support of Objection to Confirmation* ("Trustee's Brief"). [Doc. #26].

## JURISDICTION AND VENUE

The court has subject matter jurisdiction of this case under 28 U.S.C. §1334 and the general order of reference issued by the United States District Court for the Northern District of Ohio. General Order 2012-7. This is a core proceeding under 28 U.S.C. §157(b) and the court has authority to enter final orders. Pursuant to 28 U.S.C. §§1408 and 1409, venue in this court is proper.

## FACTUAL BACKGROUND

The Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on June 24, 2022. [Doc. #1].

In Schedule I, Official Form 106I, the Debtors listed gross monthly wages of $3,042 on Line 2, with a deduction for "Tax, Medicare, and Social Security" of $649 on Line 5a. [Doc. #1, pp. 27-28]. In response to the question "How long employed there?" at the top of Schedule I, Mr. Williamson listed "3 months." [Doc. #1, p. 27]. On Line 8e, Debtors listed Social Security in the amount of $1,751 per month for Mr. Williamson, and $870 per month for Mrs. Williamson.[1] [Doc. #1, p. 28]. Their total monthly income was listed as $5,013.91 on Line 10. [*Id.*]

The Debtors also filed Form 122C-1 (*Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period*). As allowed by 11 U.S.C. §101(10A)(B), the Debtors did not include on Line 9 of Form 122C-1 any amount received that was a benefit under the Social Security Act. On Line 15 of Form 122C-1, the Debtors' annualized current monthly

---

[1]/ It is possible that the Williamsons' Social Security income may be, in part, from disability payments as opposed to age-based benefits. With the understanding that the court is not making a finding, this decision will refer to the benefits as Social Security retirement (although Mr. Williamson was not fully retired at the time of filing) or age-related benefits.

22-60625-jpg    Doc 29    FILED 02/21/23    ENTERED 02/21/23 15:28:27    Page 2 of 38

income (without including Social Security) was $19,890,[2] which is below the median family income for a two-person household in the State of Ohio, which appears to have been $70,209. [Doc. #1, p. 41, Official Form 122-C1, Line 16].

Debtors' Chapter 13 Plan [Doc. #2] proposes a payment of $100 per month for 36 months. The Trustee's Brief estimated that the Debtors' Plan would pay approximately 2.707% to unsecured nonpriority creditors.

The Debtors also filed Schedule J, Official Form 106J. [Doc. #1, p. 29-30]. On Line 21 of Schedule J, which allows deductions for "Other: Specify" the Debtors deducted $880 for "social security back out." [Doc. #1, p. 30]. In this initial filing, the Debtors deducted $880 in Social Security income on Schedule J, rather than the full $2,621 per month they receive in Social Security. This resulted in Line 23 of Schedule J stating "monthly net income" of $100, the exact amount they proposed to pay into their Chapter 13 Plan. [*Id.*].

On August 11, 2022, the Trustee filed the *Objection to Confirmation of Plan*. The Trustee's Objection asserted that the Debtors' Chapter 13 Plan: 1) does not commit all their disposable income under 11 U.S.C. §1325(b)(1), and 2) was not proposed in good faith. [Doc. #16, p. 1].

On August 18, 2022, the Debtors filed *Amended Schedules I and J*. [Doc. #17]. Line 8g of amended Schedule I included the Debtors' pension or retirement income of $149 ($149 per month for Mr. Williamson and $0.00 per month for Mrs. Williamson). On Line 21 of amended Schedule J, the Debtors deducted an additional $149 of their Social Security income as "social security back out" for a total deduction of $1,029. The Debtors deducted $1,029 in Social Security income on

---

[2]/ This figure, which is lower than Mr. Williamson's listed monthly income multiplied by 12 months, may be due to the fact that Mr. Williamson was only employed for three months at his job he had at the time of filing. The amount listed on Form 122C-1 is based on a six month lookback period.

3

amended Schedule J, rather than the full $2,621, again leaving $100 on Line 23c, conforming to their proposed monthly payment under the Chapter 13 Plan.

On August 24, 2022, the Hon. Russ Kendig held a hearing on the Trustee's Objection and indicated the court would issue a scheduling order.

On August 31, 2022, Judge Kendig issued the *Scheduling Order*, and gave the Debtors until September 16, 2022, to submit their brief justifying the Social Security "backout" listed on Line 21 of Schedule J, and gave the Trustee until September 26, 2022, to submit a response. [Doc. #21].

On September 16, 2022, Debtors submitted their brief, which provided certain background information. [Doc. #25]. For example, it was stated that Mr. Williamson intends to reduce the number of hours he currently works to twenty hours a week, starting in December 2022 when Mrs. Williamson was scheduled to have knee replacement surgery. This reduction would cut his employment income in half.

The Debtors are trying to accumulate some savings to pay for emergency expenses, and they anticipate having to pay out-of-pocket for Mrs. Williamson's knee replacement surgery in December 2022. The Debtors also point to their monthly expense of $300, which is "savings for a car." The Debtors state that if this expense is not allowed, the Debtors would simply deduct an additional portion of their Social Security income as "social security back out" to make room for this expense.

The Debtors' brief justifies excluding Social Security income on two grounds. First, Social Security income is excluded from the definition of "current monthly income" under 11 U.S.C. §101(10A)(B). Second, the Social Security Act shields benefits received under the Act. 42 U.S.C. §407.

4

On September 26, 2022, the Trustee submitted her Brief in response, which provided additional background information. [Trustee's Brief, Doc. #26]. For example, the Trustee points to amended Schedule I indicating Mr. Williamson is employed with Valley Hydraulic Service and earns a monthly gross income of $3,042, with a combined monthly income for the Debtors of $5,013.91.

At the time of filing, the Debtor-husband was 70 years old. [Trustee's Brief, Doc. #26, p. 10]. The Debtor-wife was 68 years old. *Id.*

Trustee also states the Debtors had $3,000 in a checking account that the Debtors claim as exempt under Ohio Rev. Code §2329.66(A)(3), a general exemption for cash on hand, and §2329.66(A)(13), an exemption for the personal earnings of a debtor.

Further, Trustee pointed to the fact that Debtors did not amend Form 122C-1, after amending Schedule I, to disclose the additional $149 per month in pension or retirement income, which had been omitted in the original filing. Lastly, the Trustee lists the Debtors' prior bankruptcy filings: 1) a 1993 Chapter 13 case that was completed and discharged; 2) a 2003 Chapter 13 case that was dismissed; 2) a 2005 Chapter 7 that was discharged; and, 4) a 2016 Chapter 7 case in which Debtors received a discharge.

The Trustee asked the court to: "sustain her Objection to Confirmation, hold that Debtors have sufficient disposable income with which to pay creditors in full, hold that the Chapter 13 plan as filed was not proposed in good faith as required by 11 U.S.C. §1325(a)(3); and order such other relief as this Court deems just and appropriate." [Trustee's Brief, Doc. #26, p. 13].

The Trustee raises two main arguments in opposing confirmation of the Debtors' Chapter 13 Plan.

First, the Trustee argues that the Debtors are not committing all of their disposable income

22-60625-jpg    Doc 29    FILED 02/21/23    ENTERED 02/21/23 15:28:27    Page 5 of 38

to the Chapter 13 Plan. The Trustee takes the position that Social Security benefits must be used to pay for living expenses. In other words, the Trustee argues that a debtor must commit Social Security benefits to meet basic needs. In turn, this frees up nonexempt income, the "surplus" according to the Trustee, to pay unsecured creditors.

Second, the Trustee generally argues that the Debtors' Chapter 13 Plan has not been proposed in good faith. For example, the Trustee argues the failure to disclose pension income, the perceived inaccuracy of the Debtors' filing (in comparison to their bank statements) and their proposal not to pay all of their "surplus," which includes Social Security income, indicates the Debtors have not proposed their Chapter 13 Plan in good faith.

On September 30, 2022, the parties were notified that this case will be transferred from the Hon. Russ Kendig to Judge Gustafson effective October 1, 2022. [Doc. #27].

## LAW AND ANALYSIS

The issues before the court involve the relationship between benefits received under the Social Security Act, "disposable income," and "good faith."[3] The court begins with some historical background relating to the statutes in issue.

---

[3]/ Collier on Bankruptcy provides the following history of the "good faith" requirement in Chapter XIII and Chapter 13:

> Section 1325(a)(3) is derived from Section 651 of the former Bankruptcy Act. There is no reported case law construing the good faith requirement under Section 651 of the Bankruptcy Act, nor does the original legislative history of section 1325(a)(3) specifically reveal its rationale. Although there was no interpretation of the term "good faith" in cases under Chapter XIII of the Bankruptcy Act, there were several cases concerning good faith under other chapters of that Act. For example, in the context of a proceeding filed by an individual under Chapter XII of the Bankruptcy Act, the identical statutory requirement that the plan be proposed in good faith was used to set aside an order of confirmation on appeal when the execution of the plan required so much of the debtor's future income that it left him incapable of complying with a valid prepetition support decree.

> In general, cases finding a lack of good faith under the Bankruptcy Act involved debtor misconduct, such as fraudulent misrepresentations or serious nondisclosures of material facts.

8 Collier on Bankruptcy P 1325.LH[1][a], (Richard Levin & Henry J. Sommer eds., 16th ed. 2022)(footnotes omitted).

22-60625-jpg    Doc 29    FILED 02/21/23    ENTERED 02/21/23 15:28:27    Page 6 of 38

## I.    The Statutory Background of Disposable Income and Social Security.

Chapter 13 allows eligible debtors with regular income to repay or discharge certain debts after making payments to creditors for the specified commitment period pursuant to a plan confirmed by the bankruptcy court. "Section 1325 of Title 11 specifies circumstances under which a bankruptcy court 'shall' and 'may not' confirm a plan." *See, Hamilton v. Lanning*, 560 U.S. 505, 508, 130 S.Ct. 2464, 2469, 177 L.Ed.2d 23 (2010).

Generally, where an objection based on the adequacy of payments has been filed, if the plan does not propose to pay unsecured creditors in full, the court may not confirm the plan unless the plan provides that all of the debtor's "projected disposable income" will be applied to pay unsecured creditors. 11 U.S.C. §1325(b)(1)(B).

When the Bankruptcy Code was enacted in 1978, there was no income and expense test for determining the amounts a Chapter 13 debtor would be required to pay. Payments had to be sufficient to meet the "best interest of creditors test," and Chapter 13 plans had to be proposed in "good faith." But there was no statutory requirement that all "disposable income" be paid into a Chapter 13 plan for a specified period, or until all allowed unsecured claims were paid in full, whichever occurred earlier. That provision was not added until the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA").

The BAFJA amendments must be viewed in conjunction with an earlier amendment to the Social Security Act.

The history of the protections afforded to payments under the Social Security Act were unchanged from the 1930s to 1983. The Social Security Act, §207, 42 U.S.C. §407, provided:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any

bankruptcy or insolvency law.[4]

In 1983, the provision above became 42 U.S.C. §407(a), and a subsection (b) was added. Subsection §407(b) states:

**(b) Amendment of section**

No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.[5]

In adding Section 1325(b)'s "disposable income" requirement to Chapter 13 a little more than a year after enacting §407(b), Congress did not specifically reference 42 U.S.C. §407 in the BAFJA. *Cf.*, *Hildebrand v. Social Security Administration (In re Buren)*, 725 F.2d 1080, 1085-1086 (6th Cir. 1984)(holding that the Bankruptcy Reform Act did not repeal the protections of Section 407 by implication), *cert. denied*, 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984). Arguably, Congress intended that payments under the Social Security Act were not – by "operation of any bankruptcy or insolvency law" enacted after April 20, 1983 – to be included in "disposable income." However, most courts at the time did not see it that way.

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), "disposable income" was defined as "'income which is received by the debtor' less amounts reasonably necessary for the maintenance or support of the debtor, certain charitable contributions, and certain business expenses." *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013). Based on §1325(b)(2)'s broad definition of "disposable income," from 1984 to 2005 "courts typically included Social Security benefits in the calculation of disposable income." *See*,

---

[4]/ *See e.g.*, *Rowan v. Morgan (In re Rowan)*, 15 B.R. 834, 839 (Bankr. N.D. Ohio 1981)(White, J.)(quoting the pre-1983 version of the statute).

[5]/ Pub. L. 98–21, title III, § 335(a), Apr. 20, 1983, 97 Stat. 130. Some of the legislative history of this amendment, as it relates to bankruptcy, is recited in *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 223-224 (5th Cir. 2012).

*Baud v. Carroll*, 634 F.3d 327, 347 (6th Cir. 2011)(collecting cases).

In 2005, the BAPCPA directly addressed the issue of the proper status of income from Social Security in bankruptcy by adding a specific exclusion for "benefits received under the Social Security Act (42 U.S.C. 301 et. seq.)" to the definition of a new term: "current monthly income."

## II.   The Plain Meaning of the Statute.

The court's analysis must begin with the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 69, 131 S.Ct. 716, 723, 178 L.Ed.2d 603 (2011).

In 2005, the BAPCPA amendments changed the statutory basis for determining how "disposable income" was calculated by adding a defined term: "currently monthly income". 11 U.S.C. §101(10A).[6]

"Current monthly income is defined in section 101(10A) as the average of the last six months income received from all sources by debtor (or in a joint case, the debtor and the debtor's spouse) with certain adjustments. The definition is a critical component of . . . the disposable income test under Section 1325(b)." 2 Collier on Bankruptcy ¶101.10A at 1001-75 (16th ed. 2022)(citations omitted); *see also*, Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 Am. Bankr. Inst. L. Rev. 665, 667 (2005).

The definition of "current monthly income" specifically excludes: "benefits received under the Social Security Act (42 U.S.C. 301 et seq.)." 11 U.S.C. §101(10A)(B)(ii)(I).

---

[6]/ It should be noted that this decision does not rely upon "legislative history" – the internal evolution of a statute as reflected in the comments of legislative committees or individual legislators. Instead, the court is looking at the statutory history of the legislation, both the Social Security Act and the Bankruptcy Code, that are at issue here. *See e.g.*, *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007). While "plain meaning" is paramount, it has been held that: "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *In re Buren*, 725 F.2d at 1087 (citing *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380-381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)).

9

Section 1325(b)(2) of the Bankruptcy Code directly incorporates "currently monthly income" into the "disposable income" calculation. 11 U.S.C. §1325(b)(2). "'Disposable income' is now defined as 'current monthly income received by the debtor' less 'amounts reasonably necessary to be expended' for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures. §§ 1325(b)(2)(A)(i) and (ii)." *Lanning*, 560 U.S. at 510.

Under §1325(b)(1)(B), if the Chapter 13 trustee or the holder of an allowed unsecured claim objects to confirmation of a debtor's plan that does not provide for full payment of unsecured claims, the plan may be confirmed only if it "provides that all of the debtor's projected *disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." §1325(b)(1)(B) (emphasis added).

The Bankruptcy Code does not define the term "projected disposable income." *Lanning*, 560 U.S. at 509; *Penfound v. Ruskin (In re Penfound)*, 7 F.4th 527, 530 (6th Cir. 2021). "But the Supreme Court has held that it is simply the debtor's disposable income, under § 1325(b)(2), adjusted for any 'changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.'" *Davis v. Helbling (In re Davis)*, 960 F.3d 346, 350 (6th Cir. 2020)(quoting *Lanning*, 560 U.S. at 524). "When a debtor expects no changes in financial circumstances, as 'in most cases,' her 'projected disposable income' under § 1325(b)(1) is simply her 'disposable income' as defined in [§ 1325(b)(2)]." *In re Penfound*, 7 F.4th at 530 (citing *Davis*, 960 F.3d at 350 (quoting *Lanning*, 560 U.S. at 519)).

The Sixth Circuit Court of Appeals looked at the interrelationship of these statutes in *Baud*, stating: "we hold that the calculation of a debtor's projected disposable income: (a) must not include items—such as benefits received under the Social Security Act—that are excluded from

the definition of currently monthly income set forth in § 101(10A); . . ." 634 F.3d at 331.

This court cannot ignore the definition of "disposable income" under the BAPCPA amendments and its unambiguous directive excluding Social Security benefits. *See, Baud*, 634 F.3d at 345–46 (holding that bankruptcy courts may not ignore the statutory directive clearly excluding Social Security income). As discussed above, the plain language of the Code excludes the Debtors' Social Security income from their required payments in the Chapter 13 Plan. *Id.* at 345; *Mort Ranta*, 721 F.3d at 251 ("We hold that the plain language of the Bankruptcy Code excludes Social Security income from the calculation of 'projected disposable income'); *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1131 (9th Cir. 2013)("Congress has spoken directly, and it explicitly excluded Social Security income from the calculation of disposable income."); *Beaulieu v. Ragos (In re Ragos)*, 700 F.2d 220, 223 (5th Cir. 2012)(Section 101(10A) is a "'clear indication that Congress intended . . . a departure' from the practice of including social security benefits in projected disposable income." (citing *Baud*, 634 F.3d at 347); *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1318 (10th Cir. 2012)("the plain language of the Bankruptcy Code demonstrates SSI is excluded from the projected disposable income calculation."); *Fink v. Thompson (In re Thompson)*, 439 B.R. 140, 142 (B.A.P. 8th Cir. 2010)("The plain language of the Bankruptcy Code specifically excludes Social Security income from a debtor's required payments in a Chapter 13 plan.).

## III.     The Trustee's Argument That Social Security Needs to Be Accounted For In Determining Disposable Income.

In seeking denial of confirmation of the Debtors' Chapter 13 Plan, the Trustee's arguments related to the Debtors' Social Security income are based on: 1) "disposable income"; and 2) the confirmation requirement of "good faith." The court will address the "disposable income" issue first.

The Trustee acknowledges that "§101(10A)(B)(ii)(I) excludes benefits received under the Social Security Act in an effort to maintain the purpose of the Social Security Act. [Trustee's Brief, Doc. #26, p. 4]. But the Trustee asserts:

"The Social Security Act was enacted as 'remedial legislation to be construed liberally to achieve its purpose of easing the insecurity of life.'" *Black v. Sullivan*, 793 F. Supp 45, 47 (D. RI, 1992) citing to *Pelletier v. Secretary*, 525 F. 2d 158, 161 (1st Cir. 1975). Certainly, a debtor in bankruptcy must be afforded the opportunity to use social security benefits in a manner consistent with the purpose of the Social Security Act.

However, when a debtor with multiple sources of income files for relief under Chapter 13, must the Chapter 13 Trustee assume that the Debtor is using all sources of income other than social security to meet necessary and reasonable living expenses, and blindly ignore the monthly surplus, or deem the monthly surplus to be solely from social security and thus untouchable under 42 U.S.C. §407(a)? Or, conversely, does due diligence on the part of the Trustee require the Trustee to assume the social security income, which is being provided by the government to ensure that an individual is able to meet a certain basic level of necessary living expenses, is actually being used to meet those living expenses (which then infers that the surplus is actually not social security)? The answer lies within a determination of whether §1325(b)(2) was meant to be purely a mathematical calculation with the analysis of the surplus amount being a similar analysis to that provided within Official Form 122C, or whether the more practical approach of viewing and comparing external documentary sources of income and expenses such as pay advices and bank statements to income as disclosed on Schedule I and the expenses as disclosed on Schedule J is more appropriate.

Schedule I is designed to have a debtor list monthly income as of the date the form is filed. [See Part 2 instructions on Schedule I, Doc. 17, Pg. 3]. This is in contrast to the requirement on Official Form 122C to identify income as a six-month average. If a debtor's income as of the date of filing is to be used to determine the amount of surplus available for a Chapter 13 payment, then use of the CMI (current monthly income) figure is contradictory, especially in cases where there is a significant disparity between the income as of the date of filing and the income as reported on Official Form 122C due to a job change or period of unemployment.

Similarly, 11 U.S.C. §1325(b) provides guidance for the basis of the amount

12

of the expenditures considered to be reasonably necessary when a debtor's income exceeds the median income, but no basis is found within the Code relative to the amount deemed reasonably necessary for debtors with current monthly income equal to or less than the applicable median family income. §1325(b) is silent on how to calculate reasonably necessary expenses for the below median debtor, perhaps suggesting that they are to be based on the debtor's actual expenses (and maybe the state and national standards provide a ceiling).

[Trustee's Brief, Doc. #26, pp. 4 – 6].

The Trustee cites the following cases that address Social Security income in Chapter 13 cases: *In re Upton*, 363 B.R. 528 (Bankr. S.D. Ohio 2007)[7]; and *Mains v. Foley (In re Mains)*, 2012 WL 612006, 2012 U.S. Dist. LEXIS 23802 (E.D. Mich. Feb. 24, 2012).[8] This court respectfully declines to follow these cases for the reasons stated below. The Trustee also heavily relies on a Chapter 7 case that dealt with 11 U.S.C. §1325 in the context of a Motion to Dismiss by the Office of the U.S. Trustee pursuant to 11 U.S.C. §707(b)(3). *In re Meehean*, 611 B.R. 574 (Bankr. E.D. Mich. 2020), *aff'd*, 619 B.R. 371 (E.D. Mich. 2020). This decision respectfully disagrees with the *Meehan* decisions to the extent they offer a different interpretation of §101(10A)(B)(ii)(I) and §1325.

Based on the above arguments and authorities, the Trustee's position appears to be that: 1) there is some independent authority that comes from the Schedule I; 2) there is a distinction between below-median debtors and above-median debtors that allows Social Security income to be considered in determining a required Chapter 13 Plan payment; and, 3) for confirmation purposes, the monies that the Debtors receive in Social Security should be required to be accounted for as being used to pay the debtors' necessary living expenses, thereby freeing up additional monies that are required to be paid into the Chapter 13 Plan, at least for below-median debtors.

---

[7]/ A case decided several years before *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011).

[8]/ The *Mains* opinion was entered before any of the four appellate court decisions discussed below.

13

There appears to be no statutory support for the Trustee's position.

It has been noted that: "the Code provides a single definition of 'disposable income,' and that definition uses 'current monthly income' as a starting point without differentiating between debtors of different income levels. 11 U.S.C. § 1325(b)(2). Although the Code goes on to distinguish between above-median income and below-median income debtors for purposes of calculating the 'amounts reasonably necessary' for the debtor's maintenance or support, *id*. § 1325(b)(3), there is no distinction on the income side." *Mort Ranta*, 721 F.3d at 251; *see also*, *In re Scott*, 488 B.R. 246, 253 (Bankr. M.D. Ga. 2013); *In re Berry*, 2013 WL 249862 at *3, 2013 Bankr. LEXIS 296 at *8 (Bankr. E.D. Wash. Jan. 23, 2013); 2 Collier on Bankruptcy, ¶101.(10A) at 101-78 (16th ed. 2022)("[T]he disposable income test of sections 1325(b) and 1129(a)(15) is based on current monthly income for all debtors, both above and below median income."). Accordingly, the statutory directive, for both above and below-median debtors, is that benefits received under the Social Security Act are "excluded"[9] from "current monthly income."

The Trustee appears to argue for the calculation of "projected disposable income" based upon first applying Social Security to pay necessary expenses, thereby reducing allowed expenses dollar-for-dollar. The determination of "projected disposable income" would then be based upon the Debtors' non-Social Security income, less the reduced expenses. This argument fails for a number of reasons.

---

[9]/ Courts have noted that the choice Congress made to exclude Social Security income is not that surprising, "given that creditors are unable through judicial process to collect from a debtor's social security income outside of bankruptcy. See 42 U.S.C. §407(a)." *In re Brown*, 2014 WL 4793243 at *4, 2014 Bankr. LEXIS 4070 at *9 (Bankr. E.D. Wis. Sept. 24, 2014). The bankruptcy court decision in *Ragos* also notes that "creditors had no right to seize [Social Security] benefits pre-petition". *In re Ragos*, 466 B.R. 803, 808 (Bankr. E.D. La. 2011), *aff'd Ragos*, 700 F.2d 220. Adding: "Decisions regarding credit advances could not, or perhaps should not, have been based on the existence of social security income." *Id*. Similarly, "social security income can also generally not be attached in a bank account" to the extent the monies are traceable proceeds. *Dale Recycling & Used Auto Parts, Inc. v. Wade (In re Wade)*, 598 B.R. 34, 39 (Bankr. N.D. Ga. 2019).

First, the Trustee's argument is incompatible with the Supreme Court's directive that "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 1194, 188 L.Ed.2d 146 (2014).[10] Under *Law*'s holding, this court cannot rely on equity to include Social Security benefits in conflict with explicit mandates in the BAPCPA amendments. *Id.* Nothing in the Bankruptcy Code suggests that bankruptcy courts may ignore the statutory definition of "disposable income" in this manner. *See, In re Ragos*, 700 F.2d at 224. As the Supreme Court has stated: "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Lamie v. U.S. Tr.*, 540 U.S. 526, 538, 124 S.Ct. 1023, 1032, 157 L.Ed.2d 1024 (2004)(citation omitted).

The Trustee states: "§1325(b) is silent on how to calculate reasonably necessary expenses for the below-median debtor, perhaps suggesting that they are to be based on the debtor's actual expenses (and maybe the state and national standards provide a ceiling)." [Trustee's Brief, Doc. #26, pp. 5-6]. But this speculation is hard to square with Supreme Court and Sixth Circuit guidance on expense deductions.

The Supreme Court has addressed the difference between the deductions allowed for above-median debtors and below-median debtors. "The phrase 'amounts reasonably necessary to be expended' in § 1325(b)(2) is also newly defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for 'maintenance or support,' *see* § 1325(b)(2)(A)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included . . . ." *Lanning*, 560 U.S. at 510; *see also*, *Baud*, 634 F.3d

---

[10]/ The Supreme Court in *Law* held that the language in 11 U.S.C. §522(c) means what it says, and the Chapter 7 Trustee was precluded from surcharging the debtor's exempt property, even though the debtor was guilty of egregiously bad conduct in the case. *Id*. at 422.

22-60625-jpg    Doc 29    FILED 02/21/23    ENTERED 02/21/23 15:28:27    Page 15 of 38

at 332-333; *Schultz v. United States*, 529 F.3d 343, 348 (6th Cir. 2008)(noting that expenditures for below-median-income debtors are to be calculated as they were pre-BAPCPA). But, in contrast to an above-median debtor's entitlement to applicable monthly expenses under National Standards and Local Standards, below-median debtors "must prove on a case-by-case basis that each claimed expense is reasonably necessary." *Ransom*, 562 U.S. at 71 n.5.

The Sixth Circuit also addressed the issue of below-median debtor's expenses in *Baud*:

> For debtors with current monthly income equal to or less than the applicable median family income, § 1325(b) is silent on how to calculate these amounts, suggesting that they are to be based (as before BAPCPA) on the debtor's reasonably necessary expenses. *See Schultz v. United States*, 529 F.3d 343, 348 (6th Cir.2008) (noting that expenditures for below-median-income debtors are to be calculated as they were pre-BAPCPA); 6 Lundin, *supra*, § 466.1 ("Chapter 13 debtors with [current monthly income] less than applicable median family income remain subject to the familiar reasonable and necessary test for the deductibility of expenses in § 1325(b)(2)(A) and (B).").

*Baud*, 634 F.3d at 332-333; *see also*, *In re Scott*, 488 B.R. at 254 (citing both Collier and Lundin).

Moreover, no cited decisions,[11] nor any statutory language, supports the Trustee's proposed

---

[11]/ The court's own research reflects one post-BAPCPA decision that supports Trustee's position, *In re Hall*, 442 B.R. 754, 761-762 (Bankr. D. Idaho 2010)("Social security disability payments, while serving as an income substitute, are intended to provide for a claimant's basic needs. . . . Application of SSDI benefits to a debtor's basic needs will offset non-SSDI income that is currently being used for such purposes."). The argument, based on *Hall*, was presented by the Appellant-Trustee to the Bankruptcy Appellate Panel in *Welsh*. Appellant's Br., 2012 WL 2132530 at *12. The majority opinion stated:

> We reject the reasoning of the cases that say that, because Social Security payments are intended to provide for a recipient's basic needs, a debtor must use the benefit payments to provide for those basic needs, thereby freeing up other, non-exempt income, for plan payments. *E.g.*, *In re Hall*, 442 B.R. 754 (Bankr. D. Idaho 2010). This approach simply does by indirection what the Code says cannot be done, which is to include Social Security benefit payments in a debtor's disposable income calculation.

*In re Welsh*, 465 B.R. 843, 856 (9th Cir. BAP 2012). The author of *Hall* also wrote the dissent in *Welsh*, but does not appear to specifically defend the *Hall* approach in his dissent. Going back through the pre-BAPCPA cases that *Hall* relied upon, there does not appear to be any citation to a statute, rule or regulation requiring that Social Security retirement benefits be used for basic needs. The statement that "the Debtors must use these benefits for their basic needs" was apparently, for this line of pre-2005 cases, regarded as self-evident. *See e.g.*, *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 798 (9th Cir. BAP 1995).

approach for determining "projected disposable income" using the method of first applying Social Security to pay basic necessary expenses. Instead, the order of calculation for disposable income under §1325(b)(2) appears to weigh against the Trustee's proposed methodology. The statute states that "disposable income" is current monthly income – which §101(10A)(B)(ii)(I) defines as excluding "benefits received under the Social Security Act" – "less amounts reasonably necessary to be expended." *See*, §1325(b)(2). Section 1325(b)(2) states an ordered process by which the calculation of disposable income is to be made: Social Security is excluded first, because it is not part of the base amount of 'current monthly income," then certain additional dependent income is excluded.[12] Expenses are deducted last. *Id*.

The Trustee advocates for a different order, first applying Social Security to certain basic living expenses, and then determine what non-Social Security income - less the remaining expenses, after they have been reduced by the application of the Social Security funds – remains available to pay to creditors. In addition to the fact that there is no statutory support for calculating projected disposable income using this formula, it also must be rejected because it does not appear to follow the ordered method of calculation set forth in the statute.

In addressing a similar argument dealing with the child support exclusion, the Seventh Circuit Court of Appeals held that §1325(b)(2) sets forth an ordered procedure for determining "disposable income." *Brooks v. Clark (In re Brooks)*, 784 F.3d 380 (7th Cir. 2015). "The subsection is structured to *first* allow an above-median debtor to calculate her income (excluding reasonably necessary child support), and *second*, to deduct from that figure standardized living

---

[12]/ The parenthetical provision states: "(other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child)." §1325(b)(2). Note that there is no language corresponding to: "to the extent necessary to be expended for such child" in the Social Security exclusion. §101(10A)(B)(ii)(I). This shows that Congress knew how to place limitations on exclusions – in this case the child support related exclusion - and they chose not to do so in the Social Security benefits exclusion.

22-60625-jpg     Doc 29     FILED 02/21/23     ENTERED 02/21/23 15:28:27     Page 17 of 38

expenses,[13] as defined in § 707(b)(2)(A) and (B)." *Id.*, at 385 (emphasis in original). The *Brooks* court held that under the trustee's proposed method of calculating disposable income "it would be impossible to complete the first step of the calculation (the income component) without first jumping ahead to the second step (the expense component)." *Id.* The same problem is present here in the Trustee's proposal to first apply social security to necessary expenses, and then determine what non-Social Security income is over and above the necessary expenses not covered in the initial step.

More fundamentally, the foundation underlying the Trustee's argument is the premise that Social Security is intended to provide recipients with monies to "meet a certain basic level of necessary living expenses." From there, the Trustee argues that there may be some corresponding legal obligation for the Chapter 13 Trustee to determine if those funds are "actually being used to meet those living expenses." However, the Trustee cites no legal authority for the proposition that Social Security must be used for basic living expenses, either inside or outside of bankruptcy. In this case it appears there is no statutory obligation that the Debtors use the monies they receive from Social Security retirement for any particular purpose. Providing basic necessities may have been part of the broad goals that Congress had in enacting the Social Security Act, but the Trustee does not point to any statutory directives limiting what these Debtors must spend their benefits on.[14]

The Trustee's argument also places more legal weight on Schedule I than it can support.

---

[13]/ *Brooks* dealt with an above-median debtor. For below-median debtors the second step would be deducting reasonably necessary expenses.

[14]/ There are situations where there are actual legal limitations placed on the use of Social Security benefits, such as where the funds are for the support of a child. When Social Security monies are paid to a "representative payee", there are restrictions on what Social Security payments can be spent on. *See,* 20 C.F.R. § 404-2040(a); 42 U.S.C. §1007(j) (defining "misuse of benefits"). No such statutory, regulatory or rules-based restrictions on the Debtors' use of their age-based Social Security benefits have been cited to the court.

22-60625-jpg     Doc 29     FILED 02/21/23     ENTERED 02/21/23 15:28:27     Page 18 of 38

The Official Forms are not at the top of the bankruptcy law hierarchy. As courts have noted, "when an Official Bankruptcy Form conflicts with the Code, the Code always wins." *Drummond v. Wiegand (In re Wiegand)*, 386 B.R. 238, 241 (9th Cir. BAP 2008); *In re Gonzalez*, 597 B.R. 133, 138 (D. Colo. 2018); *In re Dumas*, 608 B.R. 902, 921 (Bankr. N.D. Ga. 2019)("The Court will not bend its construction of the Code to match the form."); *In re Arnold*, 376 B.R. 652, 653 (Bankr. M.D. Tenn. 2007).

Under 11 U.S.C. §521(a)(1)(B)(ii): "(a) The debtor shall – (1) file – (ii) a schedule of current income[15] and current expenditures." *See also*, Fed. R. Bankr. P. 1007(b)(1)(B) (requiring debtors to file "a schedule of current income and expenditures" on the Official Forms). Schedule I [Official Form 106I] is required to be filed by all Chapter 13 debtors, both above-median debtors and below-median debtors.[16] One of the disclosures required by Schedule I, under "List all other

---

[15]/ "Current income" is not the same as the term "current monthly income", which was added and defined by the BAPCPA amendments. The *Lanning* decision treats the two terms as not being interchangeable. The pre-BAPCPA version of §521 contained the same language as today, requiring debtors to file "a schedule of current income and current expenditure." *See*, 11 U.S.C. §521(1) (2000). Further, while the level of truth contained in the bankruptcy quip: "'current monthly income' is not current, nor monthly, nor income" can be debated, clearly "current monthly income" is not "current". Despite its name, "current monthly income," as defined in 11 U.S.C. §101(10A), requires that debtors calculate income by averaging their income in the six-months preceding the bankruptcy filing. Thus, the income figure is based on historical, not "current" income. The income figure is what debtors provide on Official Form B 122C-1, a form that every Chapter 13 debtor is required to file. *See*, Fed. R. Bankr. P. 1007(b)(6) & (c).

[16]/ The Trustee's Brief states: "Schedule I is designed to have a debtor list monthly income as of the date the form is filed. [See Part 2 instructions on Schedule I, Doc. 17, Pg. 3]. This is in contrast to the requirement on Official Form 122C to identify income as a six-month average." [Trustee's Brief, Doc. #26, p. 5]. The document that is the source of the instruction the Trustee cites is Official Form 106I (Schedule I) itself. A word that is left out of the Trustee's characterization, but is the first word in the instructions, is "Estimate." Schedule I, Part 2 starts with: "Estimate monthly income as of the date you file this form." However, Official Form 106I has longer separate instructions. While they are two pages in length, here is one short quotation: "One easy way to calculate how much income per month is to total the payments earned in a year, then divide by 12 to get a monthly figure. For example, if you are paid seasonally, you would simply divide the amount you expect to earn in a year by 12 to get the monthly amount." So, maybe look back a year in the first sentence. Or look at what you "expect" to earn in a year in the second sentence – which appears forward looking. While the instructions are helpful in pointing debtors in the right direction on what Schedule I is looking for – and with how to do the basic math that is involved in the calculation - the actual instructions to Schedule I appear to endorse neither a six-month lookback period, nor a requirement that the income be genuinely "current." The longer "Instructions – Bankruptcy Forms for Individuals" appear to be offering suggestions that will help debtors make the required "Estimate." This appears to be the kind of estimate that would be made on a form intended to be informational, rather than one intended to have precise legal consequences. The Official Form Instructions are on the U.S. Court's website at pages 28 - 29: https://www.uscourts.gov/file/22710/download

19

income regularly received," is Question 8e: "Social Security." When income from Social Security is properly listed, it is included (usually automatically by the bankruptcy filing software) at the bottom of Schedule I on Line 10 as "monthly income" and on Line 12 as part of "combined monthly income." In turn, those income figures become part of "monthly net income" on Line 23 of Schedule J [Official Form 106J]. While Schedules I and J are useful tools, they do not determine what a Chapter 13 debtor needs to pay into their plan – the Bankruptcy Code does that.

There is no question that a debtor must list their Social Security income on Schedule I. *See*, *Baud v. Carroll*, 634 F.3d at 335 ("As required, the Appellees also filed Schedule I, listing gross monthly income of $9,115.63 (including Social Security benefits for one of the Appellees and income from employment for the other) . . . ."); *Marshall v. Blake*, 885 F.3d 1065, 1069 n.2 (7th Cir. 2018); *Pliler v. Stearns*, 747 F.3d 260, 266-267 (4th Cir. 2014); *In re Damron*, 598 B.R. 350, 354 (Bankr. S.D. Ga. 2019); *In re Scott*, 488 B.R. 246, 249 (Bankr. M.D. Ga. 2013); *In re Ward*, 359 B.R. 741, 745-746 (Bankr. W.D. Mo. 2007).

A similar argument, based on Schedule I, was rejected in *Mort Ranta*:

> The Trustee also argues that Social Security income must be included in the calculation of a below-median income debtor's "disposable income" because Schedule I contains a line for its inclusion. The Trustee contends that Schedule I is used with Schedule J to calculate the disposable income of below-median income debtors . . . . The bankruptcy court may not "disregard the Code's definition of disposable income . . . simply because there is a disparity between the amount calculated using that definition and the debtor's actual available income as set forth on Schedule I." *Baud*, 634 F.3d at 345.

*Mort Ranta*, 721 F.3d at 252.

Moreover, to the extent the Trustee is arguing that the BAPCPA exclusion of benefits received under the Social Security Act should fully apply to only to above-median debtors, and not to below-median debtors, that is not consistent with the view the Supreme Court has expressed

20

regarding that legislation. In addressing the application of the "ownership deduction" to above-median debtors, *Ransom* stated: "If a below-median-income debtor cannot take a deduction for a nonexistent expense, we doubt Congress meant to provide such an allowance to an above-median-debtor—the very kind of debtor whose perceived abuse of the bankruptcy system inspired Congress to enact the means test." 562 U.S. at 71 n.5. The Trustee's argument was also specifically rejected in *Scott*: "Amended section 1325(b)(2) and section 101(10A)(B) are applicable to both above-median and below-median debtors. Thus, social security benefits are simply not disposable income for purposes of section 1325(b)(2). Since Schedule I includes social security benefits, the change to section 1325(b)(2) means that Schedule I is no longer used to determine 'disposable income.'" 488 B.R. at 253.

Above-median debtors are required to complete Official Form 122C-2, which is captioned: "Calculation of Your Disposable Income." The current version of Form 122C-2 produces a monthly "disposable income" figure on Line 45[17] - an amount that Chapter 13 debtors are presumptively required to pay to unsecured creditors, subject to a showing of changed circumstances. But, Line 45 is not necessarily the required Chapter 13 plan payment. Certain deductions may have to be added back in[18] to calculate what a debtor is actually required to pay

---

[17]/ "In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years. §§ 1325(b)(1)(B) and (b)(4). . . . For a debtor whose income is above the median for his State, the means test identifies which expenses qualify as 'amounts reasonably necessary to be expended.' The test supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations." *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 65, 131 S.Ct. 716, 721-722, 178 L.Ed.2d 603 (2011); *see also*, *Baud v. Carroll*, 634 F.3d at 333 ("For debtors with current monthly income exceeding the applicable median family income, however, § 1325(b)(3) requires courts to determine the amounts reasonably necessary to be expended in accordance with the "means test," *i.e.*, the statutory formula for determining whether a presumption of abuse arises in Chapter 7 cases.").

[18]/ "Disposable income" is the amount left over after the deductions permitted by the Means Test under § 707(b)(2). Thus, to calculate the Chapter 13 plan payment, deductions for debts that are going to be paid by the Chapter 13 trustee – for example for priority claims deducted on Line 35 – must be added back to calculate the monthly payment that is required to pay unsecured creditors all "disposable income" over the life of the Chapter 13 plan.

21

the Trustee each month. In contrast, while Schedules I and J are helpful in determining "disposable income" for below-median Chapter 13 debtors, they have a more general purpose – including an informational component – as demonstrated by the fact that above-median Chapter 13 debtors are still required to file Schedules I and J. However, the requirement that Social Security be listed as "other income regularly received" on Schedule I cannot change the Bankruptcy Code's explicit exclusion of that income in §101(10A)(B)(ii)(I).

The disclosure of Social Security income on Schedule I is important[19] because such income is considered in determining whether or not a debtor has "regular income" for eligibility purposes under 11 U.S.C. §109(e). *See*, *Buren*, 725 F.2d at 1086; *United States v. Devall*, 704 F.2d 1513, 1516 (11th Cir. 1983); *In re Johnson*, 634 B.R. 806, 816 (Bankr. D. Colo. 2021); 2 Collier on Bankruptcy ¶101.30[1] (16th ed. 2022). The disclosure of Social Security income is also relevant in determining whether or not the proposed Chapter 13 plan is feasible under 1325(a)(6). *Mort Ranta*, 721 F.3d at 253; *In re Mihal*, 2015 WL 2265790 at *4, 2015 Bankr. LEXIS 1683 at **13-14. While inclusion of income received under the Social Security Act is not required, voluntary inclusion of all or any part of those funds in a proposed monthly Chapter 13 Plan payment is not prohibited. *In re Manzo*, 577 B.R. 759, 766 (Bankr. N.D. Ill. 2017); *Matter of Ogden*, 570 B.R. 432, 436-437 (Bankr. N.D. Ga. 2017); *In re Franklin*, 506 B.R. 765, 776 (Bankr. C.D. Ill. 2014).

There does not appear to be any standardized approach for adjusting the numbers on Schedules I and J to make them reflect the amount of the Chapter 13 Plan payment – nor does it appear necessary that the bottom line of Schedule J be the proposed Plan payment. Here, the

---

[19]/  While the calculation of employment income may not be subject to clear rules, the rules of professional responsibility still apply to the completion of Schedule I and each question/line of that document, including the final question: "Do you expect an increase or decrease within the year after you file this form?" It should also be noted that while Schedule I income may be subject to more than one reasonable method of calculation, there are other filing documents that have precise requirements and harsh legal consequences. In particular, the debtor's obligation to disclose assets is particularly unforgiving. *See*, *Stanley v. FCA US, LLC*, 51 F.4th 215, 219 (6th Cir. 2022).

Debtors used Line 21 on Schedule J ("Other") to deduct the exact amount of Social Security income that would leave the exact amount on Line 23c corresponding with the exact amount of the Debtors' proposed Plan payment. While there is nothing wrong with what the Debtors did, even if there had been no "social security back out" on Line 21 it would have no effect on whether or not the Chapter 13 Plan was actually proposing to pay all "projected disposable income" to unsecured creditors.

While it may be helpful to have some indication as to what portion – if any – of Social Security income is going into a Chapter 13 plan, the required Schedule I disclosure of that income does not somehow require debtors to include income that the Bankruptcy Code explicitly excludes from disposable income. As one court has noted, "trustees and other parties determining whether a debtor has contributed her 'projected monthly income' to the plan are fully capable of considering the implications of social security income being listed on Schedule I." *In re Ward*, 359 B.R. at 746. Chapter 13 trustees regularly make additions to disposable income numbers to come up with the required Chapter 13 plan payments. Subtraction of amounts received under the Social Security Act, to calculate whether a Chapter 13 Plan meets the disposable income test under §1325(b)(1)(B),[20] is not so different an undertaking.

Finally, it should be noted that Congress recently amended 11 U.S.C. §101(10A), to add a new exclusion for veterans' benefits. *See*, §101(10A)(B)(ii)(IV). In a legal landscape where every

---

[20]/ If the Debtors in this case had not "backed out" the Social Security income to make Line 23 reflect the amount of proposed monthly Chapter 13 Plan payment, the Trustee would do the following calculation: The monthly Social Security income for each Debtor listed on Line 8e - $1,751 and $870, respectively - would be added together, for a monthly total of $2,621 in Social Security. The number on Line 23 of Schedule J (without the "social security back out" on Line 21 of Schedule J) would have been $1,129 per month. [Doc. #17, p. 6]. The proposed Chapter 13 Plan payment was $100 a month. See, Chapter 13 Plan [Doc. #2, p.1, ⁋2.1]. The $2,621 in Social Security being greater than the $1,129 in "monthly net income," the Debtors "disposable income" would be negative (-$1,492), reflecting that the requirement of §1325(b)(1)(B) would have been met (subject to confirmation of the income and expense numbers).

appellate court to address the issue has enforced the statutory exclusion for Social Security,[21] the only change that Congress made was adding a new category of excluded income.  In doing so, the Honoring American Veterans in Extreme Need Act of 2019 amendment (also known as the "HAVEN Act") stated a limitation on the new exclusion: "except that any retired pay excluded under this subclause shall include retired pay paid under chapter 61 of title 10 only to the extent that such retired pay exceeds the amount of retired pay to which the debtor would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title." *See*, §101(10A)(B)(ii)(IV).  This is a nuanced statutory limitation on the newly created exclusion – something that is not found in the exclusion for benefits received under the Social Security Act. *See*, §101(10A)(B)(ii)(I) & Footnote 12, *supra*.

For all of the above reasons, the court finds that "benefits received under the Social Security Act" are excluded from "current monthly income" under §101(10A)(B)(ii)(I), which in turn excludes such income from "disposable income" under §1325(b)(2).  There is no statutory basis for requiring Social Security income to be used to meet the "disposable income" test through any of the indirect methods suggested by the Trustee, and Official Forms cannot abrogate the plain language[22] of the Bankruptcy Code and Rules.

---

[21]/  "We assume that Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp*., 498 U.S. 18, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990); *see also, Lamar, Archer & Cofrin v. Appling*, ___ U.S. ___, 138 S.Ct. 1752, 1762, 201 L.Ed.2d 102 (2018)(applying the rule where "Courts of Appeals consistently construed the phrase" in issue); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 524, 104 S.Ct. 1188, 1995, 79 L.Ed.2d 482 (1984)("Congress is presumed to be aware of judicial interpretations of a statute.").  While the addition of veterans' benefits to §101(10A)(B)(ii) through the HAVEN Act, without otherwise altering the statutory definition, is by no means conclusive standing on its own, it is another suggestion that Congress meant what it said: that benefits under the Social Security Act are excluded.  However, it is another data point that suggests that not considering Social Security income as part of a "good faith" analysis is not contrary to Congress's intent.

[22]/  While this "plain language' approach to statutory interpretation favors the Debtors in the case at bar, it disadvantages other Chapter 13 debtors in similar, but not identical, circumstances.  Arguably, logic and equity would support protecting other retirement income that serves the same purpose and function as Social Security.  But, because it is not specifically excluded by statute, it has been held that such income is not excluded from "disposable income". *See e.g, Meyer v. Scholz (In re Scholz)*, 447 B.R. 887, 891 (9th Cir. BAP 2011), *aff'd sub nom., Meyer v. U.S. Tr. (In re Scholz)*, 699 F.3d 1167 (9th Cir. 2012) (Railroad Retirement Act benefits not excluded); *Final Report of the ABI*

IV.    **Good Faith v. The Statutory Exclusion of Benefits Received under the Social Security Act from Disposable Income.**

A.  **Statutory Context and Applicable Law.**

The requirement that a Chapter 13 Plan be proposed in "good faith" has been part of Chapter 13 since the Bankruptcy Code was enacted in 1978. "The Bankruptcy Code, however, fails to precisely define "good faith." *In re Barrett*, 964 F.2d 588, 591 (6th Cir. 1992). The Sixth Circuit Court of Appeals has stated that good faith "is an amorphous notion, largely defined by factual inquiry." *In re Okoreeh-Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988).

"The Chapter 13 bankruptcy process requires a petitioner to propose a bankruptcy plan in good faith." *Stanley v. FCA US, LLC*, 51 F.4th 215, 219 (6th Cir. 2022). Accordingly, a confirmable Chapter 13 plan must be proposed in good faith. 11 U.S.C. §1325(a)(3). The party seeking discharge under Chapter 13 bears the burden of proving good faith. *See, In re Caldwell*, 895 F.2d 1123, 1126 (6th Cir. 1990)["*Caldwell II*"].

Precedent applying the "good faith" requirement considers "the totality of the circumstances," *Stanley*, 51 F.4th at 220 (citing *Barrett*, 964 F.2d at 592), which includes, but is not limited to, a consideration of a variety of factors. *In re Caldwell*, 851 F.2d 852, 859-860 (6th Cir. 1988)["*Caldwell I*"]; *Caldwell II*, 895 F.2d at 1126.

Eleven factors to be considered in determining good faith were listed in *Caldwell I*:

(1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged

---

*Commission on Consumer Bankruptcy*, III(C) § 3.07 Means Test Revisions & Interpretations at 133-135 (American Bankruptcy Institute, 2017-2019).

and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

*Caldwell I*, 851 F.2d at 859 (quoting *U.S. v. Estus* (*In re Estus*), 695 F.2d 311, 317 (8th Cir. 1982)), *see also*, *Kitchens v. Ga. R.R. Bank & Tr. Co.* (*In re Kitchens*), 702 F.2d 885, 888-889 (11th Cir.1983).

> *Caldwell I* then listed four additional factors:
>
> (1) whether the debtor is attempting "to abuse the spirit of the Bankruptcy Code,"
> (2) "good faith does not necessarily require substantial repayment of the unsecured claims,"
> (3) the fact a debt "is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13," and
> (4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, *per se*, evidence of bad faith but may be considered as part of the totality of the circumstances analysis, . . . .

*Caldwell I*, 851 F.2d at 859-860 (citations omitted). *Caldwell II* added to *Caldwell I*'s *Estus* list: "(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code." *Caldwell II*, 895 F.2d at 1127.

However, "no one factor should be viewed as being a dispositive indication of the debtor's good faith." *Caldwell I*, 851 F.2d at 860. In "the final analysis, good faith should be evaluated on a case-by-case basis in light of the structure and general purpose of Chapter 13." *In re Doersam*, 849 F.2d 237, 239 (6th Cir. 1988).

## B. Analysis.

Again, the court's analysis of the meaning of §1325(a)(3) must begin with the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. at 241; *Ransom v. FIA Card Services, N.A.*, 562 U.S. at 69.

The statute states that the court "shall" confirm a plan if the plan has been proposed in "good faith." 11 U.S.C. §1325(a)(3). However, as already noted, the Code does not define "good faith." In light of the unquestionable importance of the good faith requirement for purposes of confirmation, the proper role of Social Security benefits in the Chapter 13 context initially resulted in a disagreement in the reported decisions. *See, In re Baud*, 634 F.3d at 346 n.13.

The primary question presented here is, to what extent can this court consider *Caldwell I*'s first "good faith" factor: "(1) the amount of the proposed payments and the amount of the debtor's surplus." *Caldwell I*, 851 F.2d at 859; *Caldwell* II, 895 F.2d at 1126. As discussed above, this factor pre-dates the 1984 BAFJA amendments that added a disposable income test to the Bankruptcy Code. *See*, *In re Estus*, 695 F.2d 311, 317 (8th Cir. 1982)("(1) the amount of the proposed payments and the amount of the debtor's surplus;").

When *Caldwell I* adopted the list of "good faith" factors, post-BAFJA, the majority rule was that benefits received under the Social Security Act were not excluded from income. Thus, the issue presented is not whether *Caldwell I & II* have somehow been "overturned" or superseded by statute – in many contexts, "the amount of the debtor's surplus" remains an uncontroversial factor in determining the issue of "good faith."[23] Instead, it is a question of how *Caldwell I & II* and other pre-BAPCPA decisions by the Sixth Circuit Court of Appeals should be applied to the post-2005 statutory landscape.

As discussed above, after *Caldwell I* was decided Congress excluded benefits received under the Social Security Act from the definition of disposable income without any statutory

---

[23]/ As Judge Shapero stated in *In re Mihal*: "This Opinion should not be interpreted as eviscerating the good faith requirement and its relevance in this or other situations. It only concerns the exclusion of Social Security income from a debtor's disposable income pursuant to § 1325(b), and does not touch on other "ability to pay" issues that are, or may be, involved in confirmation." 2015 WL 2265790 at *5, 2015 Bankr. LEXIS 1683 at *14 (Bankr. E.D. Mich. May 6, 2015).

27

exception for situations where there is a "surplus" for the debtors resulting from that exclusion. In one of the first major cases interpreting BAPCPA's provisions, the Sixth Circuit Court of Appeals recognized the statutory exclusion of Social Security from disposable income in *Baud*, but did not address the issue of "good faith." *Baud*, 634 F.3d at 346 n.13 ("Because the Appellees have chosen to devote Social Security benefits to unsecured creditors, this good-faith issue is not before us today.").

While there was a lively debate about whether or not a Chapter 13 debtor's failure to voluntarily include benefits received under the Social Security Act was a basis for denial of confirmation on the grounds that their plan was not proposed in good faith, the majority view has been clear for a decade.

Every circuit court that has considered the issue has held that a debtor relying on the statutory exclusion of Social Security, and not voluntarily paying those funds into a Chapter 13 plan, is not a basis for finding a lack of "good faith." *See, Mort Ranta v. Gorman*, 721 F.3d, 241, 253 n.15 (2013); *In re Welsh*, 711 F.3d 1120, 1131-1134 (9th Cir. 2013); *Beaulieu v. Ragos* (*In re Ragos*), 700 F.3d 220, 226–27 (5th Cir. 2012); *Anderson v. Cranmer* (*In re Cranmer*), 697 F.3d 1314, 1318-1319 (10th Cir. 2012). A contrary decision by the Sixth Circuit Court of Appeals would create a circuit split where none currently exists.

As discussed above, the first "good faith" factor listed in *Caldwel I & II* – "(1) the amount of the proposed payments and the amount of the debtor's surplus;" – comes verbatim from an earlier appellate decision, *In re Estus*, 695 F.2d 311, 317 (8th Cir. 1982). The same test was adopted by the Tenth Circuit in *Flygare v. Boulden*, 709 F.2d 1344, 1347-1348 (10th Cir. 1983). Notably, the Tenth Circuit – while specifically referencing the *Flygare* test – held that: "When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the

Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith." *Cranmer*, 697 F.3d at 1319.   In a footnote, *Cranmer* states:

> Since *Flygare* was decided, however, the Bankruptcy Code was amended to include 11 U.S.C. § 1325(b). See *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987).  Section 1325(b)'s "'ability to pay' criteria subsumes most of the *Estus* factors" and, therefore, the good faith inquiry now "has a more narrow focus." *Id*.

697 F.3d at 1318 n.5.   Neither *Cranmer*, nor *Zellner* out of the Eighth Circuit, were *en banc* decisions, indicating that *Flygare* was not being "overruled."[24]

The *Estus* decision was similarly not an impediment to the Eighth Circuit Bankruptcy Appellate Panel holding – prior to the issuance of the four circuit court decisions listed above – that: "Considering the Debtors' exclusion of their Social Security income from their plan payments as part of the good faith analysis would improperly render section 1325(b)'s ability to pay test meaningless."[25] *In re Thompson*, 439 B.R. at 143 (citing, *In re Barfknecht*, 378 B.R. 154, 164

---

[24]/   *See*, *United States v. Baker*, 49 F.4th 1348, 1358 (10th Cir. 2022)(citing cases holding that a three-judge panel cannot overrule a prior published decision)

[25]/   At first glance, this statement may seem to be an exaggeration, but one of the main cases relied on by the Trustee appears to demonstrate otherwise.  In the Bankruptcy Court decision in *In re Meehan*, the debtors had income of $1,834.98 in non-Social Security income, and $4,007 in benefits received under the Social Security Act.  611 B.R. at 578.  The Court calculated that by combining both sources of income, the debtors would have a surplus of $1,252.32 each month.  Based on the debts in issue, *Meehan* stated that the debtors could afford to "pay their unsecured creditors *in full* in about 41 months"  611 B.R. at 579 (emphasis in original).  The debtors argued that dismissal under §707(b)(3) would be pointless because they could file a Chapter 13 Plan and exclude all of their income.  The *Meehan* court stated: "Under this Court's view of the 'good faith' confirmation requirement of § 1325(a)(3), it is very doubtful that the Debtors in this case could confirm a plan that paid the unsecured creditors nothing. It is much more likely that the Debtors could confirm only a plan that paid their unsecured creditors in full." 611 B.R. at 592.  With non-Social Security income of only $1,834.98 (which would be $22,019.76 annually), under §1322(d)(2) the *Meehan* debtors would have been well below the median income level for a household size of two in Michigan in April of 2019, which was $62,618. *See*, https://www.justice.gov/ust/eo/bapcpa/20190401/bci_data/median_income_table.htm . So, under *Meehan*'s view of "good faith", debtors would not only have to apply every penny of their Social Security income to pay creditors in a Chapter 13 (exactly as if it were non-Social Security income), but they would also apparently be required to extend their Chapter 13 Plan from 36 to 41 months to make full payment, despite the specific exclusion of Social Security from the above/below-median calculation.  Which invites the question: if there is not even a penny's difference in the treatment of Social Security and non-Social Security income, does not that render large chunks of the BAPCPA amendments "mere surplusage"? *See*, *Leocal v. Ashcroft*, 543 U.S. 1, 12, 125 S.Ct. 377, 160 L.Ed.2d (2004)("[W]e must give effect to every word of a statute wherever possible"); *City of Chicago, Illinois v. Fulton*, ___ U.S. ___,

29

(Bankr. W.D. Tex. 2007)); *see also*, *In re Cranmer*, 697 F.3d at 1319; *In re Manzo*, 577 B.R. at 768; *In re Thompson*, 439 B.R. at 144; 8 Collier on Bankruptcy ¶1325.04[1] (16th ed. 2022)("Considering a debtor's exclusion of Social Security income from plan payments as part of the good faith analysis would improperly render section 1325(b)'s ability to pay test, which incorporates the term 'current monthly income,' meaningless.").

Collier on Bankruptcy agrees that "good faith" cannot be a substitute for the detailed metrics Congress enacted. *See*, 8 Collier on Bankruptcy ¶1325.04[1] (16th ed. 2022)(noting that the fact that Congress specifically excluded "benefits under the Social Security Act from the definition of 'current monthly income' should preclude any arguments that a debtor is not proposing a plan in good faith because the debtor has not included such benefits in calculating the amounts to be paid to unsecured creditors" (footnote omitted)).

Directly addressing the position that the Trustee advocates, Collier states: "Likewise, an argument that plan is not in good faith if the debtor does not use Social Security benefits for other necessary expenses in order to free up funds for debtor repayments should be rejected. Any such argument, of necessity, disregards the statutory directive to use 'current monthly income' in calculating the amounts available for unsecured creditors, and would have exactly the same effect in undermining the protection intended by Congress."[26] *Id.*

Lower courts have similarly formed a strong consensus that a debtor's choice to rely upon the statutory exclusion of Social Security, and not voluntarily offer all or some part of that income,

---

141 S.Ct. 585, 591, 208 L.Ed.2d 384 (2021)("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

[26]/  The Trustee's proposed method for determining Debtors' Chapter 13 Plan payment raises additional questions. Presumably, all income exclusions under 11 U.S.C. §101(10A)(B)(ii) should be treated the same, as they are part of the same subsection. What expenses would be required to be paid by victims of terrorism and war crimes, to free up monies for unsecured creditors? Would disabled veterans be required to use funds under §101(10A)(B)(ii)(IV) for medical expenses first, to increase their "disposable income" in order to avoid a good faith objection?

is not a basis for finding a lack of good faith. *See*, *In re Manzo*, 577 B.R. at 766–68; *Valdenbosch v. Waage (In re Valdenbosch)*, 459 B.R. 140, 144 (M.D. Fla. 2011); *In re Green*, 2018 WL 1581635 at **3–4, 2018 Bankr. LEXIS 899 at **7-10 (Bankr. S.D. Ga. Mar. 27, 2018); *Matter of Ogden*, 570 B.R. at 436–39; *In re Moore*, 2016 WL 4247041 at *7, 2016 Bankr. LEXIS 2873 at *22 (Bankr. D. Kan. Aug. 5, 2016); *In re Mihal*, 2015 WL 2265790 at **2–4, 2015 Bankr. LEXIS 1683 at **4-13; *In re Melander*, 506 B.R. 855, 859–862 (Bankr. D. Minn. 2014); *In re Canniff*, 498 B.R. 213, 217 (Bankr. S.D. Ind. 2013); *In re Scott*, 488 B.R. at 256–58.

Similarly, leading treatises do not support requiring that benefits received under the Social Security Act be included in a Chapter 13 plan: 2 Collier on Bankruptcy, ¶101.10A (16th ed. 2022)("immunizing such income from being considered available to pay creditors in . . . chapter 13."); Keith M. Lundin, *Lundin On Chapter 13*, §12.5, at ¶6 ("Thus, for confirmation purposes, debtors need not include in [current monthly income] Social Security benefits—putting those benefits beyond the entitlement of unsecured creditors at confirmation under §1325(b).").

Taking a step back, it is very common for debtors in bankruptcy to retain "surplus" funds that could be used to pay creditors. For example, if the Debtors here had a $280,000 jointly owned residence, free and clear of liens, they could exempt all of that equity under Ohio's homestead exemption provision,[27] an amount far greater than the Social Security income at issue here. Today, trustees rarely attempt to make the argument that "yes, the debtors meet the 'best interest of creditors' test' based on their homestead exemption, but they could use that equity in their home

---

[27]/ At the time *Caldwell I* was decided, Ohio's homestead exemption [O.R.C. §2329.66(a)(1)] was $5,000 for each joint debtor, for a total homestead exemption of $10,000 for a married couple. *See*, *In re Jaber*, 406 B.R. 756, 762 (Bankr. N.D. Ohio 2009)(noting that as of September 30, 2008, the Ohio homestead exemption increased from $5,000 to $20,200). Currently, the Ohio homestead exemption is $145,425, allowing a married couple to exempt up to $290,850. *See*, *Villavicencio v. Terlecky*, 2023 WL 1070236 at *2, 2023 U.S. Dist. LEXIS 14905 at *5 (S.D. Ohio Jan. 27, 2023)("The homestead exemption afforded by Ohio Revised Code § 2329.66(A)(1)(b) provides that a debtor may exempt his interest, up to the statutory limit of $145,425, in 'one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.' Ohio Rev. Code § 2329.66(A)(1)(b).").

31

to pay creditors, so their Chapter 13 plan cannot be confirmed because of the absence of 'good faith.'" While the sacrosanct nature of the homestead exemption pre-dates the Bankruptcy Code, at the time *Caldwell I* was decided, "surplus" probably would have included a debtor's retirement accounts.[28] Today, despite the fact that excluding ERISA-qualified retirement accounts from the bankruptcy estate deprives creditors of funds that could be used for repayment of their just debts, the retention of those undistributed funds for the debtor's personal benefit is accepted as settled law, not subject to a collateral "good faith" attack.

The appellate case law on the relationship between the Social Security exclusion and "good faith" was (if anything) a foreshadowing of broader trends in interpreting bankruptcy law - limiting the equitable discretion of bankruptcy courts in favor of requiring that the provisions of the Bankruptcy Code and Rules be applied as written. As the Supreme Court stated in reversing a bankruptcy court's decision that relied upon §105(a): "We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421, 134 S.Ct. 1188, 1195, 188 L.Ed. 2d 146 (2014). *Law* further cautioned: "it is not for courts to alter the balance that Congress struck in crafting" the statute in issue. *Id.* at 416. The decision ends by noting that bankruptcy courts "may not contravene express provisions of the Bankruptcy Code" by surcharging exempt property using their equitable powers under §105(a). *Id.* at 427-428.

Similarly, in *In re Smith*, 999 F.3d 452 (6th Cir. 2021), the Court of Appeals held that there

---

[28]/ *Caldwell I* was decided in 1988. The law excluding ERISA-qualified retirement plans was not clarified in the Sixth Circuit until the 1991 decision *In re Lucas*, 924 F.2d 597 (6th Cir. 1991)(reversing the District Court's affirmance of summary judgment in favor of the Chapter 7 Trustee based on the retirement funds being property of the estate). When the Supreme Court decided *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Sixth Circuit's decision in *Sicherman v. Ohio Public Employees Deferred Compensation Program (In re Leadbetter)*, 946 F.2d 895, 1991 WL 211232, (6th Cir. Oct. 21, 1991)(unpublished)(upholding a turnover order for a deferred compensation retirement account) was remanded by the Supreme Court. 505 U.S. 1202, 112 S.Ct. 2987, 120 L.Ed. 865 (1992).

was no exception to a Chapter 13 debtor's right to dismiss their case based upon the debtor having filed the case in bad faith. The *Smith* court specifically noted that no circuit court had found an exception to the plain language of the dismissal statute after *Law v. Siegel* was decided in 2014. *See*, *Smith*, 999 F.3d at 456. The argument that Rule 60(b)(3) allowed a way around the dismissal – through reinstatement – was rejected based on the hierarchy of bankruptcy law: "any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *Id*.

As *Smith* and *Law* instruct: equitable considerations cannot be substituted for the plain language of the statute.

It is important to remember that in this case there is no allegation that the Debtors' receipt of benefits under the Social Security Act involves unfair manipulation, egregious behavior, misrepresentations, subterfuge, or unfair exploitation of the Code by the Debtors.[29] The Debtors both appear to be fully age-qualified to receive Social Security retirement benefits, and the Trustee asserts that their previous 2016 Chapter 7 bankruptcy reflects that the Debtors were receiving "similar pension and social security amounts" at that time.[30] [Trustee's Brief, Doc. #26, p. 6].

In enacting the BAPCPA amendments, Congress crafted a comprehensive new approach[31]

---

[29]/ See, *In re Welsh*, 465 B.R. at 854-855; *In re Spruch*, 410 B.R. 839, 843-844 (Bankr. S.D. Ind. 2008); *In re Williams*, 394 B.R. 550, 572 (Bankr.D.Colo.2008). It is difficult to see how any type of impropriety could be associated with merely receiving benefits under the Social Security Act, but those who seek advantage through misconduct have an inventive spirit. Here, the court follows *Welsh* in holding that such a finding of misconduct may not be "based on the mere fact that the debtor has excluded income . . . that the Code allows." *Welsh*, 465 B.R. at 855.

[30]/ Decisions rejecting a particular statute that provides some debtor protection sometimes refer to the disfavored provision as a "safe harbor", almost as a pejorative term. *See e.g.*, *In re Stitt*, 403 B.R. 694, 702-03 (Bankr. D. Idaho 2008). But there is a difference between having docked in the harbor for many years or arriving on a regularly scheduled passenger ship, versus a captain tacking against the wind flying the flag of a buccaneer. Bankruptcy law has always paid close attention to debtor conduct leading up to the filing of a petition – this is illustrated in everything from the provision for the recovery of preferences, to the Means Test look-back period, to the most recent Sixth Circuit decision on 401(k) contributions in Chapter 13 cases. *See*, *Davis v. Helbling (In re Davis)*, 960 F.3d 346 (6th Cir. 2020); *In re Penfound*, 7 F.4th 527 (6th Cir. 2021). Again, in terms of their receipt of Social Security, it appears that the Debtors here are longtime residents of the harbor.

[31]/ As the Supreme Court stated in *Law*: "The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional

33

to calculate what amounts debtors would be required to pay into a Chapter 13 plan. It is difficult to see how a debtor excluding benefits received under the Social Security Act, in compliance with the detailed "disposable income" calculations that Congress added to the Bankruptcy Code, is a legally sufficient basis to support the finding of a lack of good faith. *In re Ragos*, 700 F.3d at 227 ("[R]etention of exempt social security benefits alone is legally insufficient to support a finding of bad faith under the Bankruptcy Code."); *In re Cranmer*, 697 F.3d at 1319 ("When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith.").

*Welsh* is particularly strong on this issue. "We cannot conclude, however, that a plan prepared completely in accordance with the very detailed calculations that Congress set forth is not proposed in good faith. To hold otherwise would be to allow the bankruptcy court to substitute its judgment of how much and what kind of income should be dedicated to the payment of unsecured creditors for the judgment of Congress." *Welsh*, 711 F.3d at 1131-1132. Thus, when "a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes [Social Security income], that exclusion cannot constitute a lack of good faith." *Id.* at 1132 (quoting *In re Cranmer*, 697 F.3d at 1319)(alteration in original); *see also, In re Ragos*, 700 F.3d at 227; *In re Thompson*, 439 B.R. at 144; 8 Collier on Bankruptcy ¶1325.04[1] (16th ed. 2022)("Debtors are not in bad faith merely for doing what the Code permits them to do." (citation omitted)).

Accordingly, this court follows the decisions that hold that where "Congress speaks

---

exceptions." *Law*, 571 U.S. at 425. While the court in *Law* was referring to exemption provisions, the statement would appear to apply with equal force to the 2005 legislation crafted to calculate "disposable income."

directly to one of the good faith factors, the judicial good faith inquiry is narrowed accordingly."[32]

*Welsh*, 711 F.3d at 1132; *Cranmer*, 697 F.3d at 1319 n.5; *Manzo*, 577 B.R. at 768; *Mihal*, 2015 WL 2265790 at *2, 2015 Bankr. LEXIS 1683 at *6.  This approach is consistent with the rule that the "specific" – which here would be the statutory exclusion of Social Security – controls over the "general" – which would be the good faith requirement.[33]  *See*, *In re Green*, 2018 WL 1581635 at *3, 2018 Bankr. LEXIS 899 at *8 (citing *RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 645, 132 S.Ct. 2065, 182 L.Ed.2d 967 (2012)("[I]t is a commonplace of statutory construction that the specific governs the general . . . .  [T]hat is particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions."); *see also*, *Law v. Siegel*, 571 U.S. at 421 ("[A] statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.").

The BAPCPA amendments were intended, in part, to replace a system that dealt with the

---

[32]/  Sixth Circuit case law on "good faith" has not squarely addressed the overarching question of how the factors should be adapted to changes in the underlying law.  The *Okoreeh-Baah* court avoided the issue of the effect of the 1984 amendments to the Bankruptcy Code because prior case law did not impose an "inflexible rule."  836 F.2d at 1034 n.4.  The change in the law regarding the filing of a Chapter 13 case after a Chapter 7, resulting from the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), was acknowledged in *Barrett* in its discussion of the standard of review.  "The recent decision in *Johnson*, 111 S.Ct. at 2150, makes clear that serial filings are not, in and of themselves, improper, unless they fall within one of the enumerated categories of prohibited serial filings: . . . ."  *Barrett*, 964 F.2d at 591-592.  An unpublished decision, *In re Francis*, 69 F. App'x 766 (6th Cir. July 31, 2003) essentially adopts the Bankruptcy Appellate Panel's decision (*In re Francis*, 273 B.R. 87 (6th Cir. BAP 2002), despite the dissent in the Bankruptcy Appellate Panel decision, asserting that finding "good faith" violated the holding in *Caldwell II*.  *Francis*, 273 B.R. at 96.  Finally, in *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447 (6th Cir. 2009) the court held that a bankruptcy court could not find "good faith" where the debtor's Chapter 13 plan violated a "910 creditor's rights" under the "hanging paragraph."

[33]/  It might be argued that Congress could have specifically amended the "good faith" requirement of §1325(a)(3) to make it even clearer that Social Security income was no longer relevant to this confirmation requirement.  But it has been the very flexibility of the term "good faith" that has allowed it to remain part of the individual debt adjustment statutes from Chapter XIII under the Bankruptcy Act, up until today under the Bankruptcy Code.  Through all those years, no statutory changes in Chapter 13 have been a momentous enough shift to alter the use of the term "good faith."  The statutory exclusion of Social Security was no exception.  And if the Social Security exclusion had been singled out, it would have raised the issue of all of the other provisions not "extra excluded" from review under the good faith standard.  The argument would go: "Well, Congress specifically excluded benefits received under Social Security from the good faith requirement under §1325(a)(3), that is a clear indication that payments to victims of war crimes [11 U.S.C. §101(10A)(B)(ii)(II)] can be required to be included in the debtor's proposed Chapter 13 Plan to demonstrate 'good faith.'"

calculation of Chapter 13 Plan payments on a "case-by-case basis, which led to varying and often inconsistent determinations." *Ransom*, 562 U.S. at 65. The replacement of that system with a "standardized formula" for expenses – and a blanket exclusion for benefits received under the Social Security Act – is by its nature going to be "over- and under-inclusive." *Id*. at 78. To eliminate "case-by-case adjudication" the *Ransom* court stated that "Congress chose to tolerate the occasional peculiarity that a bright-line test produces." *Id*. The overall trend of bankruptcy law since the enactment of the Bankruptcy Code, at least on the consumer side, could be viewed as a movement away from case-by-case determinations and toward the oldest bankruptcy virtue: uniformity. *See*, U.S. Const. Art. I, §8, cl. 4; *Siegel v. Fitzgerald*, ___ U.S. ___, 142 S.Ct. 1770, 213 L.Ed.2d 39 (2022)(discussing the uniformity requirement of the Bankruptcy Clause); *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 461 (6th Cir. 2009)("Congress enacted the BAPCPA precisely so that judges would have less, not more, discretion under the Bankruptcy Code.").[34]

Congress cannot get feedback on its statutory exclusion of Social Security income if courts do not enforce the plain language of the statute. On the other hand, if Congress decides that the present statutory scheme, being applied as written, is not working as intended – it is free to modify or eliminate the statutory exclusion for benefits received under the Social Security Act.[35] *See*, *Meehean*, 619 B.R. at 378 (within the limits set by the Constitution, "the Code is a creature of congressional policy"(quoting *In re Krohn*, 886 F.2d.123, 126-127 (6th Cir. 1989)(citing *United States v. Kras*, 409 U.S. 434, 446–47, 93 S.Ct. 631, 638–39, 34 L.Ed.2d 626 (1973))).

---

[34]/ The Sixth Circuit's case law on "good faith" states that the analysis involves judicial discretion. *See, Caldwell I*, 851 F.2d at 858 ("[T]he good faith calculus requires the use of **discretion** by the bankruptcy judge…." (citing *Okoreeh-Baah*, 826 F.2d 1033)); *see also*, *Barrett*, 964 F.2d at 592 ("[T]he bankruptcy court's **discretionary** power in making a determination of good faith").

[35]/ For example, Congress could pass an amendment referencing that it was modifying 42 U.S.C. §407 by changing the language of 11 U.S.C. §101(10A)(B)(ii)(I) to exclude benefits received under the Social Security Act only to the extent those benefits are not subject to federal income taxation.

22-60625-jpg    Doc 29    FILED 02/21/23    ENTERED 02/21/23 15:28:27    Page 36 of 38

For all of the above reasons, the court finds that the fact that the Debtors' chose not to include benefits under the Social Security Act as part of the proposed monthly payments in their Chapter 13 Plan is not a basis for finding a lack of "good faith" under §1325(a)(3).

### C. The Trustee's Other Arguments for Finding a Lack of Good Faith.

In addition to the disposable income arguments related to Social Security, the Trustee also alleges a lack of good faith based upon the number of prior bankruptcy cases filed by the Debtors,[36] and the failure to file an updated Form 122C-1 after disclosing an additional $149 in pension income on amended Schedule I, Line 8g.[37] [Doc. #17, at p. 4].  There are also allegations that there are two possible unlisted creditors, Huntington Bank and Aaron's [Trustee's Brief, Doc. #26, p. 11] and that amounts were misstated by Debtors in their Schedules, based on a reconciliation of the bank statements with what the Debtors listed.[38]

These factual allegations require a more fully developed record to determine whether a lack of good faith can be found.  Accordingly, this matter will be set for an evidentiary hearing on the other grounds that the Trustee asserts would allow the court to find a lack of good faith.

**THEREFORE**, for the foregoing reasons,

**IT IS ORDERED** that the Trustee's Objection to Confirmation of Plan [Doc. #16] be, and hereby is, **DENIED IN PART** to the extent that the Objection is based upon the Debtors' failure to include benefits received under the Social Security Act in their proposed Chapter 13 Plan payments

---

[36]/  *See*, *In re Barrett*, 964 F.2d 588, 591 (6th Cir. 1992).

[37]/  Annual "Pension" income was disclosed in response to Question 5 on the Statement of Financial Affairs. [Doc. #1, Official Form 107, p.33]  Income of $1,768.44 from "Pension" was disclosed for 2020.  Almost the same amount ($1,768.00) was disclosed as "Retirement Income" for 2021.  $1,768 divided by 12 is approximately $147.

[38]/  "In addition, when averaging the five months of expenses detailed on the bank statements, it appears that Line 6b should be approximately $26.00 instead of $100.00; and that Line 15d should be approximately $53.00 instead of $80.35." [Trustee's Brief, Doc. #26, p. 10].

22-60625-jpg    Doc 29    FILED 02/21/23    ENTERED 02/21/23 15:28:27    Page 37 of 38

**IT IS FURTHER ORDERED** that the Trustee's *Objection to Confirmation of Plan* [Doc. #16] is scheduled for a pre-trial on March 29, 2023 at 1:30 p.m. to schedule an Evidentiary Hearing on the remaining grounds asserted for denial of confirmation.

22-60625-jpg    Doc 29    FILED 02/21/23    ENTERED 02/21/23 15:28:27    Page 38 of 38